*W. D. Lee* and *P. H. Lee,* for appellant.

---

## PEACOCK ET UX. *v.* ALBIN.

WITNESS.—*Statute.—Heirs.*—Under the second proviso in the act of March 11th, 1867, 3 Ind. Stat. 559, "defining who shall be competent witnesses," etc., the word "heirs" includes all persons who take any portion of the es-

tate under the statute of descents, or who would have thus taken, did they not take by virtue of a will. A widow taking by will is an heir.

SAME.—*Chose in Action.*—The words "other property," in the proviso, do not apply to an action brought upon evidences of debt or things in action, which belonged to an ancestor and descended under the statute to an heir, or were bequeathed by a will to a person who would have inherited under the statute.

SAME.—*Assignment of Claims.*—Under the first proviso of said act regarding witnesses, the assignment of uncollected claims, when made in the mode prescribed for assigning such claims to heirs or legatees, does not restore the competency of witnesses, who would have been incompetent if the action had been brought by an administrator or executor.

APPEAL from the Harrison Circuit Court.

BUSKIRK, C. J.—This was an action brought by the appellants, before a justice of the peace on a promissory note, executed by the defendant below, and appellee here, on the 1st day of July, 1856, payable to Samuel H. Keen, who was then in full life, which note was afterward, on the 22d day of April, 1866, assigned by Robert Leffler, executor of the last will and testament of said Keen, deceased, to Ella Keen (now Peacock), one of the appellants, and sole legatee under the said will, which assignment was made in pursuance of an order of the court of common pleas of Harrison county, under the provisions of section 110 of "an act providing for the settlement of decedents' estates."

Judgment was rendered by the justice of the peace in favor of the plaintiffs, from which the defendant appealed to the circuit court, in which court a judgment was rendered for the defendant.

The plaintiffs moved the court for a new trial, which motion was overruled, and the plaintiffs excepted.

Upon the trial of the cause, the following facts were admitted to be true: That said Samuel H. Keen had departed this life; that prior to his death he executed his last will and testament, by which he devised all of his real and personal property to his then wife, and now one of the plaintiffs; that Robert Leffler was appointed the executor of said will, who qualified as such; that on the 26th day of April, 1866, the said executor had paid all the debts against the estate

of said Keen; that the note sued on was a part of the assets of said estate, and as such was assigned by the said Leffler, executor as aforesaid, to Ella Keen, who was at that time Keen's widow; that said assignment was made by and in pursuance of an order of the court of common pleas of Harrison county, in order that the executor might settle the estate. The plaintiffs made all the proof that was necessary to entitle them to recover, if no defence was made.

The defence was that the defendant had paid and discharged the note in suit to Keen in his lifetime. The defendant offered himself as a witness in his own behalf, and over the objection and exception of the appellants he was permitted to testify in reference to the payment of the said note.

This ruling is assigned for error, and is the principal question discussed by counsel in their briefs.

It is claimed by the appellants that the appellee was rendered incompetent as a witness by the first and second provisos to the second section of "an act defining who shall be competent witnesses," etc., approved March 11th, 1867. See 3 Ind. Stat. 559.

The first section of the above act defines who are competent witnesses, and renders any person, a party in a civil action, competent to testify in his own behalf, or in behalf of any other party or parties therein.

The second section defines who are incompetent as witnesses. There are two provisos to this section, which read as follows:

"Provided, that in all suits where an executor, administrator or guardian is a party in the case where a judgment may be rendered either for or against the estate represented by such executor, administrator or guardian, neither party shall be allowed to testify as a witness unless required by the opposite party, or by the court trying the cause, except in cases arising upon contracts made with the executor, administrator or guardian of such estate." * * * * *
"And provided further, that in all suits by or against heirs,

founded on a contract with or demand against the ancestor, the object of which is to obtain title to or possession of land or other property of such ancestor, or to reach or affect the same in any way, neither party shall be allowed to testify as a witness as to any matter which occurred prior to the death of such ancestor, unless required by the opposite party or by the court trying the cause, and the assignor of the plaintiff in any such suit, where there has been an assignment of the cause of action, shall be deemed and held to be a party within this provision."

Pursuing the order adopted by counsel in their briefs, we will, in the first place, consider the second proviso. Two questions, as applicable to the case under consideration, arise under such proviso; and they are, first, whether Mrs. Peacock, being the sole devisee and legatee under the will of her former husband, can be regarded as an heir within the meaning of the said proviso; and, second, whether the above proviso embraces a chose in action.

The general rule laid down by the statute under examination is, that all parties to a civil action are competent witnesses in their own behalf, or in behalf of other parties to such action. The above proviso makes an exception to the general rule by which either party to an action by or against heirs is disqualified.

The first inquiry is, whether either party in this action sues or is sued in the capacity of heir.

PERKINS, J., in delivering the opinion of this court, in *Thomas* v. *Thomas*, 18 Ind. 9, remarked: "It may be said that, in this State, heirs are made as well by law, as by will, but are not born, are *hæredes facti*, not *nati*." It has been repeatedly decided by this court that the widow takes as heir to her husband.

It is said by Redfield, in his work on wills, that where the word heir is used in a will, it is to be construed as meaning "the next of kin, and as including those persons who would take the estate under the statute of distributions." If Keen had

Peacock *et ux. v.* Albin.

died intestate, his widow would have been his sole heir under our statute of descents.

We are clearly of the opinion that the word heirs as used in the above proviso was intended to include all persons, whether they took the estate under the law or by virtue of a will, in all cases where the devisee or legatee would have taken any portion of the estate under the statute of descents. Any other construction would be narrow and illiberal.

We are of the opinion that Mrs. Peacock should be regarded as an heir within the meaning of the above proviso. But, regarding Mrs. Peacock as the heir of her husband, does this case come within the above proviso? Is it the purpose of the above proviso to exclude parties in all cases founded on a contract with, or demand against, the ancestor, where heirs are parties, plaintiff or defendant? If the purpose was to exclude parties as witnesses in all cases, it seems to us that the legislature might have expressed such purpose in a much briefer and far more intelligible manner. It would only have been necessary to have said, "that in all suits by or against heirs, founded on a contract with, or demand against, the ancestor, neither party shall be allowed to testify," etc. This would have expressed the legislative intention in a very clear and unmistakable manner. If such had been the language, there would have been no room for doubt, or necessity of construction. But the language is quite different. It provides, "that in all suits by or against heirs, founded on a contract with or demand against the ancestor, the object of which is to obtain title to or possession of land or other property of such ancestor, or to reach or affect the same in any way, neither party shall be allowed to testify," etc.

It seems quite clear to us, that it was the purpose of the legislature to confine the rule in its operation to a particular class of cases. It is very manifest that it was not intended that it should apply to all cases where the suit was founded on a contract with, or demand against, the ancestor, but the difficulty is in determining in what particular actions the

rule is to operate. It is very obvious, that in all actions by or against heirs, to obtain title to or possession of land of an ancestor, or to reach or affect the same in any way, neither party shall be allowed to testify. The ambiguity arises upon the phrase, "or other property." The rules of construction laid down in the code may aid in placing a construction upon the words "or other property."

"The word 'land' and the phrases 'real estate' and 'real property,' include lands, tenements, and hereditaments.

"The phrase 'personal property' includes goods, chattels, evidences of debt, and things in action.

"The word 'property' includes personal and real property."

By the above rules of construction, when the phrase, "personal property" is used, it includes goods, chattels, evidences of debt, and things in action; but when the word "property" is used, it includes only personal and real property. We are of the opinion that the phrase "other property" should be construed not to embrace "evidences of debt and things in action," when a judgment for money is demanded. It was evidently intended to exclude as witnesses parties to an action brought by or against heirs to foreclose a chattel mortgage given by an ancestor, or to an action to recover the possession or determine the title to "property" other than "real estate," and it may apply to other cases that do not now occur to us. If we should apply the exclusion to evidences of debt and things in action, the rule would become general and apply to nearly all actions founded upon a contract with, or demand against, an ancestor, when brought by or against heirs.

The second proviso must be construed in connection with the first proviso, so that effect can be given to each. We are bound to presume that they were not intended to apply to the same classes of cases. The first excludes the living from testifying against the dead in all actions where an executor, administrator, or guardian is a party, where a judgment may be rendered either for or against an estate.

The object of the actions contemplated by this section is to recover a judgment for money. They consist mainly of claims filed against an estate, and actions brought by executors, administrators, and guardians, on accounts and notes that were owing to the decedent in his lifetime. It also embraces actions upon contracts, agreements, and the like, where a judgment in money is sought. It is very seldom that an executor or administrator is either a proper or necessary party to an action, the object of which is to obtain title to or possession of lands or personal property; but where they are such parties, the other parties to the action are excluded from testifying.

The second proviso embraces actions brought by or against heirs, founded on a contract with, or demand against, an ancestor, the object of which is to obtain title to or possession of land or specific articles of property, or to affect the same in any way. This proviso was not intended to apply to actions, the object of which was to recover a judgment for money. It embraces actions to obtain the possession of land; for specific performance of contracts with the ancestor in reference to land; to quiet the title to lands, or to remove a cloud from such title; and actions to obtain the possession or try the title to articles of personal property; and there are doubtless other actions than those enumerated, to which this proviso will apply. This construction gives full force and effect to each proviso, and will, in our judgment, exclude the living from testifying against the dead in all the cases contemplated by the legislature.

We, therefore, hold that the above proviso does not apply to an action brought upon "evidences of debt or things in action," which belonged to an ancestor, and descended, under the statute, to an heir, or was bequeathed by a will to a person who would have inherited under the statute of descents.

We are next to inquire and determine whether the appellee was excluded as a witness under the first proviso above quoted. It is very clear that the language of the proviso

would not render him incompetent; but we have, after very mature consideration, arrived at the conclusion that he comes within the spirit and legislative intention.

It is very manifest that the intention of the legislature, in enacting the proviso under examination, was to provide a protection against filing unjust claims against decedents' estates, and against setting up unjust defences to an action brought by the representatives of a deceased person, founded on a demand due to such decedent in his lifetime. The purpose was well expressed by this court, in *Malady* v. *McEnary*, 30 Ind. 273, where it was said, that "death having sealed the lips of one, the law seals the lips of the other." If, then, the purpose was to guard and protect decedents' estates, why limit the operation of the law to the time when the estate is represented by the executor and administrator? Such a construction would lead to an absurdity and great injustice. It would protect the estate while represented by the administrator or executor, but would afford no protection when the estate was represented, under the provisions of the statute, by the heirs at law, or the devisees and legatees under a will. The executor or administrator does not represent himself, nor does the heir or legatee, but the estate. The executor or administrator represents the estate until the debts are paid. The law then authorizes the executor or administrator to assign to an heir or legatee any unpaid claims due such estate. The statute reads as follows:

"Sec. 114. If at the time of the final settlement, all the claims against such estate, except legacies, be paid, and there remains due such estate any uncollected claim, if any legatee or heir whose share does not exceed the amount thereof will accept it in payment of so much of his share, the same shall be assigned or delivered to him by the executor or administrator, and the estate shall be finally settled." 2 G. & H. 518.

At the time the above act was passed, parties to an action were not competent witnesses for or against each other, but they were subsequently rendered competent. When the

Peacock *et ux. v.* Albin.

assignment is made in pursuance of the above statute, the administrator or executor ceases to represent the estate, but the representation is devolved by law upon the heir or legatee, and they thus become subrogated to the rights of such executor or administrator. The assignment cannot transfer a power different in nature from that which was possessed by the assignor. The assignment of the note in suit by the executor to the widow and legatee vested in her all the rights which the executor had, and entitled her to all the remedies for the collection of the note which might have been employed by such executor.

The rights of an executor in and to the things in action belonging to the estate which he represents are thus defined by Toller on Executors: "The interest which such representative has in the decedent's property is very different from that which belongs to his own. Instead of being an absolute interest, it is only temporary and qualified. He is not entitled in his own right, but in *auter droit*, in the right of the deceased. He is interested merely with the custody and distribution of the effects."

The executor of Keen had no title to the note in suit, but he acquired by the law the right to bring suit in his representative capacity, and the power to collect the note and apply the proceeds to the purposes of the estate; and when he assigned the note to the legatee, he did not assign any title that he had in the note, but he assigned to her the right to sue upon and collect the note. An executor or administrator who assigns a claim due an estate, under the above quoted section of the statute, assumes none of the liabilities which attach to an ordinary assignor. The assignment is by operation of law. The appellee would have been a competent witness in an action upon the note brought by the decedent in his lifetime. The death of Keen rendered him incompetent. It is conceded that if the action had been brought by the executor, the appellee would have been an incompetent witness. Then how was his com-

petency restored?   The law which rendered him incompetent
has not. been altered or repealed.   The note belonged to
Keen at his death, and by virtue of his will, the title to it
was vested in his widow, who was his sole legatee, as it
would have descended to her under the statute of descents
if there had been no will.   The note belonged to her from
the death of her husband, subject to the prior and paramount
lien of the creditors of the decedent.   When the debts were
paid, the executor was authorized by our statute, by an
assignment, to confer upon the legatee the power to sue for,
collect, and apply the proceeds to the payment of the legacy
created by the will.   If the suit had been brought by and
in the name of the executor, the money, when collected,
would have been applied by him to the payment, first, of
the expenses of the administration; second, to the payment
of the ordinary debts; and third, to the payment of the
legacies.   The expenses of administration and the ordinary
debts having been paid, the executor, by his indorsement of
the note, delegated to the widow and legatee the power to
collect the note and apply the proceeds to the payment of
the legacy created by the will.

We have seen that the object of the law was to protect
estates from the payment of unjust claims, by preventing the
living from testifying against the dead.   This is effectually
done while the estate is represented by an executor or
administrator.   The plain and obvious purpose of the legis-
lature, in authorizing an assignment of claims that remained
uncollected, after the payment of the debts of the estate,
other than legacies, was to save the estate from the expense
of keeping it in court, and this commendable object would
be completely defeated if such assignment would re-
store the competency of persons as witnesses, against
whom the claims were assigned.   If the legislative intent is
carried into effect, we are unable to see how the appellee can
occupy any better or more favorable position, when the
estate is represented by the heir or legatee, under an assign-
ment, than he would when it was represented by the execu-

tor.   The estate of the deceased must be protected, no matter by whom represented.   It is our duty to give effect, if it can be done consistently with the rules of construction, to the statute authorizing the assignment of uncollected claims after the payment of the debts.   It is a wise provision. Suppose a man in declining health owns real estate worth ten thousand dollars; he desires to make suitable provision for his family; and knowing their inability to manage the farm, he sells it for ten thousand dollars, on a credit of ten years, payable in equal annual payments, with interest.   The notes are made payable to him.   He dies.   Under our statute there must be administration upon his estate, whether he dies testate or intestate.   Letters of administration, with or without a will annexed, are taken out.   By the end of the year, the administrator or executor has collected enough of the claims to pay the expenses of administration and all the debts against the estate.   At this point the statute says that the estate may be settled, if the heirs at law or the legatees are willing to take an assignment of the uncollected claims.   By this statute, the expenses of keeping the estate in court for nine years are saved.   But what heir or legatee would consent to take an assignment of the notes if it opened the door to defences that would not exist if the estate was represented by an administrator or executor?   They would say that they would prefer to incur the expense of continuing the estate in court, rather than to jeopardize the collection of the notes.

In our opinion, after very careful and mature consideration, we can only give full force and effect to the statutes under consideration, and carry out the plain and undoubted legislative intention, by holding that the assignment of uncollected claims, when made in the mode prescribed in the above section of the statute, will not restore the competency of witnesses, who would have been incompetent if the action had been brought by an administrator or executor.

We, therefore, hold that the court below erred in permit-

ting the appellee to testify as a witness, for which error the judgment must be reversed.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings in conformity with this opinion.

*W. N. Tracewell,* for appellants.

*W. A. Porter* and *T. C. Slaughter,* for appellee.