JOHN S. BRADY, SAMUEL LYON and SAMUEL MUR-
DOCK, Executors of PARKER CAMPBELL, deceased, *against*
ANDREW COLHOUN and JAMES COLHOUN, Administra-
tors of JOHN COLHOUN, deceased.

### IN ERROR.

*Campbell*, in 1805, bought of *W.* 5000 acres of land at four dollars per
acre.  The purchase was at a credit of eight years, with interest at three
per cent. after which the principal was to be paid at three, six and nine
years, reserving six per cent. on unpaid balances.  By settlement made in
1819, *Campbell* had paid the interest to *W.* up to that time, and four
thousand four hundred and twenty-nine dollars and forty-two cents on
account of principal.

In an action of assumpsit, brought in 1827, after *Campbell's* death, against
the administrators of *Colhoun*, for money so paid to *W.* in which the evi-
dence to charge the defendants consisted of a series of letters written by
*Colhoun* to *Campbell* from 1805 to 1814, from which it appeared that
*Colhoun* had been let into a participation in *Campbell's* purchase; *held*
that six letters from *Campbell* to *Colhoun*, in a period of as many years,
from 1814 to 1820, in which there was no allusion to the subject, were
evidence of the recession of the agreement between *Campbell* and *Col-
houn.*

The liability of *Colhoun* to contribute for the payments of *Campbell*
whether more or less than his proportional part, would depend on whether
the parties had agreed to aportion the profit or loss, which was a fact
for the jury.

There may be a partnership to trade in land, and it may, as in any other
case, be limited to purchasing only, the profit and loss being divisible as
stock; but. this relation does nor necessarily or naturally arise from the
bare circumstance of a joint purchase.

Joint purchasers, without an agreement of partnership, would not be enti-
tled to the remedies, nor subject to the responsibilities of partners.

If *Campbell*, as a joint purchaser, paid all the interest as it became due, a
right of action for a moiety of each payment, accrued instantly to him
against *Colhoun*, which would be barred by the statute of limitation,
when six years had run before suit brought.

The court below charged the jury, that if the contract were not rescinded
between *Campbell* and *Colhoun*, the former could recover for *interest*
paid.  The jury found a *general verdict for defendants*.  *Held* that it
appeared that the jury went on a distinct ground of fact, "*the recission
of the contract*," and if error had been committed in the charge as to
the *principal*, this court would not reverse on that ground, as it was
without prejudice to the party.

WRIT of error to a special court of common pleas of Franklin
county.

This suit was an action of *indebitatus assumpsit*, brought by the
plaintiffs for money paid, laid out and expended, by the plaintiff's
testator for the defendant's intestate.

*Parker Campbell*, the testator, on the 25th day of May, 1805,
contracted with the *Washington College*, for the purchase of five
thousand acres of land, in Beaver county, for which he agreed to

(John S. Brady, Samuel Lyon and Samuel Murdock, executors of Parker Campbell, deceased *v.* Andrew Colhoun and James Colhoun, administrators of John Colhoun, deceased.)

pay four dollars per acre. By the agreement, interest at three per cent per annum on the purchase money, was to be paid for eight years; when so much of it as remained unpaid, was to bear interest at six per cent. the interest to be paid semi-annually, and the principal was to be paid in equal payments, at intervals of three years, after the expiration of eight years.

No deed was executed by the *College* to Mr. *Campbell,* but the *College* retained the legal title as a security for the payment of the purchase money. On the 1st of October, 1819, it appeared by a settlement then had with the *College,* that Mr. *Campbell* had paid the interest up to that time, amounting to fifteen thousand dollars, and the sum of four thousand four hundred and twenty-nine dollars and forty-*two* cents, which was credited on account of the principal by the *College.*

In the year 1824, Mr. *Campbell* having failed to make further payments, the *College* brought ejectments to recover the lands sold, obtained judgments by arbitration, and possession under them. The whole negociation with the *College* was in the name of Mr. *Campbell,* and Mr. *Colhoun,* who was the father-in-law of Mr. *Campbell,* was not known in the contract by the *College;* but to prove his connection with it, and make him liable for a portion of the purchase money paid, letters from him to Mr. *Campbell,* dated in 1805, 1806, 1807, 1813, and on the 8th of June, 1814, were given in evidence, in which, Mr. *Colhoun* admitted that he was interested in the purchase; spoke of Mr. *Campbell* calling on Mr. *Reed* for *one half of the interest* on the purchase money; called it *his part* of the interest, and informed Mr *Campbell* that he had a number of advertisements printed for the sale of "*our Academy lands,*" and would distribute them.

The defendants, who conceded, that at one time there had been a contract of some sort between the parties, for the purchase of these lands, relied on evidence to show that it was abandoned, and with this view, offered in evidence six letters, dated respectively the 19th September, 1814, 5th September, 1815, 11th December, 1816, 5th November, 1819, and 27th May, 1820, from Mr. *Campbell* to Mr. *Colhoun,* and in which no allusion was made to the purchase of the college lands. To this evidence the plaintiffs objected; but it was received by the court, who signed a bill of exceptions, which was assigned for error here.

The circumstances of the parties, the embarrassments of *Campbell,* in part growing out of this contract with the *College,* and the affluence of *Colhoun* were relied upon by the defendants to fortify the defence on this point, and much evidence was given, which it is not necessary to the proper understanding of the case here to detail.

(John S. Brady, Samuel Lyon and Samuel Murdock executors of Parker Campbell deceased, *v.* Andrew Colhoun and James Colhoun, administrators of John Colhoun deceased.)

· *Parker Campbell* survived Mr. *Colhoun* some years, and died in July 1824; and this suit was brought on the 6th February, 1827.

The plaintiff's counsel (among other points,) requested the court to charge the jury. "That *John Colhoun's* administrators and estate are liable to *Parker Campbell's* executors for the one half of all money he may have paid on the contract with the *Washington Academy;* and are not confined, if otherwise entitled to recover, to the excess of payment beyond the half that *Parker Campbell* was bound to pay."

On this point the court charged the jury—"That three per cent. per annum became due, and was payable semi-annually, and after eight years six per cent. The *College* had a right to demand this sum at the periods stipulated. If there was a contract between Messrs. *Campbell* and *Colhoun,* by which each had an equal interest, and each was bound to make equal payments under the contract with the *College;* then, any sum paid from time to time in discharge of the accruing interest, by any one of the parties, beyond his proportion, was paid for the other, and the law would raise a promise to repay, but any sum paid by either, beyond the interest, that is in discharge of the principal, would be a payment on his own account, provided such payment did not exceed his proportion of the purchase money; and being a payment on his own account of his own debt, the law would raise no promise on the part of the other to repay it."

This part of the charge was assigned for error here.

. The court, in answer to a point put by the defendant's counsel, as to the statute of limitations, which was relied on in defence; charged the jury, that "if Messrs *Campbell* and *Colhoun* had a joint interest in the purchase, and Mr. *Campbell* acted as the agent, and in trust for Mr. *Colhoun,* and went on from time to time paying his money on the contract, as contended by the plaintiffs, in contemplation of carrying the contract into effect, and, in this way, paid more than his proportion of the instalments annually due, being under a legal obligation to do so, he would also have the implied assent of Mr. *Colhoun.*" "The contract was a continuing one —the trust was to exist throughout the whole concern, and when the contract should be consummated, the separate rights of each would be ascertained. While it continued, each might act for the other—intermediate settlements were not contemplated. It would, therefore, under such circumstances, be in fraud of the statute of limitations to account each payment a separate act, and liable to its operation.

The verdict was for the defendants.

*Washington,* for the plaintiff in error.

1st. As to the bill of exceptions.—The six letters dated after 1814, (admitted in evidence,) showed no connection with, or allu-

(John S. Brady, Samuel Lyon and Samuel Murdock, executors of Parker Campbell deceased, *v.* Andrew Colhoun and James Colhoun, administrators of John Colhoun, deceased.)

sion to the contract in question, and were relied on to show that it was abandoned. They were wholly irrelevant, and testimony of a dangerous character. It is put in the power of a party to select such as suited his own purpose, and suppress the residue of the correspondence; the whole of which he cannot be forced to exhibit, and any part of which he may destroy.

2d. As to the charge of the court.—*Colhoun* was not a contracting party with the *College,* and to it he never owed any liability; his liability was to *Campbell.*

If the court below were right, then *Campbell* could not have called on *Colhoun* to pay, till he had paid his full half, which, as the principal was not all to be paid for seventeen years, *Campbell* could not have recourse to *Colhoun* until that time. This view is inconsistent with the letters of *Colhoun,* and the nature of the transaction. *He* recognized his liability to pay his portion of the money as the contract progressed.

But suppose one half of the purchase money to have been paid, and the *College* had taken back but half the land; *Colhoun* could not recover any part of the land, because, the remedy must be reciprocal; and if *Campbell* cannot sue when he has paid but the one half of the purchase money, *Colhoun* could not, in the case supposed, recover any portion of the land. Here, the contract with the *College* was rescinded, and the liability of the parties to each other for money paid on the contract, while it subsisted, attached.

In the case of co-sureties, the one can only recover for what he pays beyond his proportion, because if the payment be *less, the liability* of the co-surety remains; but if the principal contract is at an end, then the surety can call on his co-surety for contribution, although he has paid less than his proportion of the entire sum of the contract.

*G. Chambers* and *M'Culloh* for the defendants in error.

1st. The case on the part of the plaintiff's was exceedingly obscure. The precise terms and nature of the contract upon which they relied, did not appear. They inferred its existence, by inference from the expressions used in letters prior to the year 1814. The defendants, admitting that a contract of some sort, in reference to these *College* lands, had once existed, relied on many circumstances to establish the fact that it had been abandoned. The letters, dated after that period, from Mr. *Campbell* to Mr. *Colhoun,* proved that a correspondence had been continued between them, and that Mr. *Campbell* did not, in it, refer to this contract, and insist on the liability of Mr. *Colhoun* to him: although the contract then become more interesting: as the rate of interest then increased, and Mr. *Campbell* after that time became embarrassed. In a case of circumstances, which, on the part of the plaintiff, as well on

(John S. Brady, Samuel Lyon and Samuel Murdock, executors of Parker Campbell, deceased *v*. Andrew Colhoun and James Colhoun, administrators of John Colhoun, deceased.)

the part of the defendant this was; the existence of this correspondence, and the silence of Mr. *Campbell*, as regards the contract were powerful circumstances to show that the contract no longer subsisted. But if these letters proved any thing, however slight, in reference to the defence, it was proper to permit them to go to the jury; particularly as both parties were dead, and the transaction involved was an ancient one. It was for the jury to say if any letters had been withheld.

2d. The jury gave a general verdict for the defendants, which could only be on the ground that the contract alleged, had been rescinded.

And, if the court did err in their charge to the jury, on this point, it was without any prejudice to the plaintiff, as the jury decided on another ground.

This is not the case where the court cannot ascertain the point upon which the verdict was given; here it may be readily separated and distinctly ascertained.

The nature of the contract was wholly a matter of conjecture.

If it were between *Campbell* and *Colhoun*, after *Campbell* bought, it was a sale to *Calhoun* by *Campbell*, and should have been declared upon by the plaintiff as such. And in case the land had been lost by the default of *Colhoun*, if *Campbell* had paid his full proportion of the purchase money, his remedy would have been on the *specific* contract, and a general action of assumpsit for money paid to the use of *Colhoun*, is not the remedy.

The action here is founded on the idea that the purchase had been made by *Campbell* for both.

This difficulty as to the nature of the contract lays at the door of the plaintiff, who lay by so long without attempting to enforce any liability on the defendant, and although, as respects a creditor it is enough to know, and establish a partnership by reputation; yet as between the parties, on a question of liability, one partner must establish the contract distinctly.

The charge of the court below was, that the plaintiff might call on the defendant for contribution for a payment of more than his proportion of the *interest*.

This would stop in 1813, when the principal was due; and any payment by the plaintiff, after that, was less than his proportion of principal and interest. This he was bound to pay, and he could therefore cast no liability on the defendant by paying this.

As between partners and co-sureties the law is well settled. One partner or surety cannot sustain an action against his copartner or co-surety for the payment of *his proportion* of the debt. It is for the excess beyond this only that a right of action exists. *Gow*. 113–14. 1 *Madox Chan*. 191. *Ex parte Crisp*. 1 *Atkins* 134–5. *Sowyer* v. *Lyon*, 10 *John. R*. 32.

(John S. Brady, Samuel Lyon and Samuel Murdock, executors of Parker Campbell, deceased, *v.* Andrew Colhoun, and James Colhoun, administrators of John Colhoun, deceased.)

But here, the contract was not rescinded by the recoveries in the ejectments instituted by the *College;* nor are the defendants affected by any negociation with the *College,* which is without their privity. The vendor, who obtains possession by ejectment for default of his vendee, does not hold as of his former estate, nor is the contract rescinded by such recovery. *Martin* v. *Youst,* 3 *Serg. & Rawle,* 432. *Marlin* v. *Willing,* 7 *Serg. & Rawle,* 297. The vendor holds possession as a security in such case, and as to the vendee, chancery relieves against the lapse of time, especially where a large part of the purchase money has been paid. The question as to *what* time the vendee shall be allowed, after the vendor has taken possession on his default, to redeem, has not been settled; but it is clear that in such case the contract is not rescinded.

*Crawford,* in reply.—The contract between *Colhoun* and *Campbell,* upon which we based the liability of the former, was involved in no doubt or obscurity. It was fully made out by the letters of Mr. *Colhoun,* which the plaintiff's gave in evidence, and which, containing admissions against his interest, are the strongest possible evidence on this point.

The letters which did not refer to this transaction, but to the affairs of the family, ought not to have been received in evidence.

The presumption of abandonment of the contract would have been as well sustained by the fact of no letters being given in evidence, as by these letters. It is because they contain *no* evidence that they were received. The law of evidence would not permit conversations between parties, in which nothing was said about the transaction in issue to be proved.

The evidence here was of no better character: and their introduction brought before the jury little extrinsic circumstances, which ought not to have reached the jury at all.

It is not only liable to these objections, but those already urged on account of the danger of tolerating this kind of evidence.

2d. It is against all equity, that *Campbell,* in a case of this sort, should not have a right to recover a proportion of any sum which he had paid. If it be conceded that he was entitled to recover for interest paid, as the court below charged the jury, on the same principle, he should be entitled for his payment of principal.

*Campbell* was the only party known to the *College* in the contract, so that one half of every dollar paid by him was for the use of *Colhoun,* who was thus unknown to the vendor.

Where one of two sureties pays the one third of the whole debt, and the principal pays the balance, the surety could most certainly call on his co-surety for contribution. So if one of two partners, pays one fourth of a debt due by the firm, upon a compromise of

(John S. Brady, Samuel Lyon and Samuel Murdock, executors of Parker Campbell, deceased, *v.* Andrew Colhoun and James Colhoun, administrators of John Colhoun, deceased.)

the whole demand, it is equal clear that he may have contribution from his co-partner. It is only where the *liability* remains, that the surety, or partner cannot be reimbursed for any payment less than the half of the debt: and when the books speak of half of the whole debt, they mean the half of the whole debt *demandable.* The case in 10 *John.* went upon a different principle. There the liability remained, and the defendant's land was subjected to it. Now, by the recovery of the land in ejectment by the *College,* all the right of the *College* to call on *Campbell* or *Colhoun,* is gone: although it be true that the vendor in such case holds as a trustee for the vendee, who *may* redeem.

It is impossible to ascertain on what point the jury found, or that they were uninfluenced in their finding by the charge of the court on this point. When the court told the jury that as to the principal we had no right to recover, it may have induced the jury to believe that we had no right to recover on account of interest: and the court will not sustain the judgment upon a conjecture that the jury found on another point, because by possibility they may have so found.

The opinion of the court was delivered by

GIBSON, C. J.—The evidence to charge the defendants consisted of a series of letters written by *Colhoun;* from which it would seem, he had been let into some sort of participation in *Campbell's* purchase. All allusion to the subject, however, having been discontinued on the part of *Colhoun* for a period of thirteen years, the defendants offered as additional evidence of the recision of their agreement, six letters written by *Campbell* in a period of as many years, in which, also, there is no allusion to the subject, although it had, at one time been a leading topic of their correspondence. We cannot admit that these letters were irrelevant, because the writer was silent on the subject of the agreement: on the contrary, they were relevant for that very reason. In connexion with the lapse of thirteen years of silence on the part of *Colhoun,* the silence of *Campbell* for at least six, was a powerful circumstance: and were the objection of irrelevancy to prevail here, it must necessarily prevent a party, under any circumstances, from being affected by silence, which, though often more significant than words, has no positive allusion to any thing. Neither do we admit the force attempted to be given to the objection that the defendants may have suppressed all but such parts of the correspondence as suited their purpose. As to that, the plaintiffs had a right to examine them on oath; and this, I understand, though tendered, was declined.

. In respect to the charge, it seems to me that both parties put

(John S. Brady, Samuel Lyon and Samuel Murdock, executors of Parker Campbell, deceased, *v.* Andrew Colhoun and James Colhoun, administrators of John Colhoun, deceased.)

to the court as a conclusion of law, what was properly a matter for the jury—the supposed liability of the defendants to contribution for the payments of *Campbell* whether more or less than his proportional part. It is obvious that this depended, in the first instance, on whether the parties had agreed to apportion the profit or loss; which is of the essence of PARTNERSHIP. Although it be by no means common, there may be a partnership to trade in land; and it may, as in any other case, be limited to purchasing only, the profit or loss being divisible as stock; but this relation does not necessarily, or even naturally, arise from the bare circumstance of the parties having purchased jointly. The existence of partnership as deducible from facts and circumstances, is not for the court but the jury; and in submitting propositions supposed to result from the evidence as conclusions of law, the plaintiffs abandoned the notion of a partnership having existed in fact, and went to the court on the supposed liability of the defendants as representing a joint purchaser. Then to put the case as favourably to them in point of fact as it will bear, we must suppose the parties had agreed to stand, as between themselves, in the relation of joint purchasers, each separately paying his share of the price, without being bound to bear an equal share of the loss; and in this aspect it is clear, they would not be entitled to the remedies, nor subject to the responsibilities of partners. The purchase was at a credit of eight years, with interest, at three per cent; after which, the principal was to be paid at three, six and nine years, reserving six per cent. on unpaid balances. *Colhoun* was taken into the purchase as if, it may be supposed, he had been originally concerned; and if *Campbell* paid, as there is reason to believe he did, all the interest as it became due, he paid a moiety of it to the use of *Colhoun,* for which a right of action instantly accrued, but which was subsequently barred by the statute of limitations. Laying partnership out of view, as the parties themselves have though fit to do, there was no agreement for advances, nor any thing which looked to the settlement of a final account. It even was not part of the agreement that they should contribute to a common fund. The advances of *Campbell* were in pursuance of his original liability for the whole, and they became demandable, not by virtue of any previous contract with *Colhoun,* but the contract which arose from the fact of payment, by implication of law. There was nothing to prevent *Campbell* from maintaining an action for a moiety of each payment the instant it was made; and I therefore cannot concur in the opinion expressed at the trial, that the statute was not a bar. The same obstacle would present itself to a recovery of the principal, were it established that *Campbell,* paid more than his share. He made various payments and the

(John S. Brady, Samuel Lyon and Samuel Murdock, executors of Parker Campbell, deceased, *v.* Andrew Colhoun and James Colhoun, administrators of John Colhoun deceased.)

jury were instructed that he had paid nothing to *Colhoun's* use, it being taken for granted that he had at no time paid more than his proportion of the instalment last due.   Now the fact would depend on the manner of the appropriation, it being abundantly clear that a debtor may apply his payments to any particular debt or account, at his election; and had the plaintiffs desired the court to put the cause to the jury on the fact of *Campbell's* having paid any particular instalment in full, it would have been error to refuse it.   They, however, thought fit to put the whole to the court as a matter of law, and it seems to me, therefore, that the principle assumed being right, we cannot say there was error in the application of it.

There is, however, another ingredient beside the statute of limitations, by which a defect in this part of the case would be cured. It appears from the whole matter, that the jury went on a distinct ground of fact, THE RECISION OF THE CONTRACT.   On no other ground could a verdict have passed for the defendants, as any application of the rule laid down, would have produced a balance to the plaintiffs.   The statute of limitations being put out of the way, (whether erroneously or not, is at present immaterial,) the plaintiffs would have clearly been entitled to a moiety of the moneys paid to keep down the interest.   It being clear then, that the jury found on a distinct question of fact, which was decisive of the cause, it would be oppressive to reverse for a misdirection in law, if such there were, which did not relate to it.   A court of error invariably disregards whatever has not contributed to the event; so that had there been misdirection in other parts of the case, it would have been insufficient to avoid the consequences of the verdict.

Judgment affirmed.