**BOWMASTER v. CARROLL et al. BLACK v. SAME. FORCIER v. SAME.***

Circuit Court of Appeals, Eighth Circuit. January 3, 1928.

Nos. 7777-7779.

1. Joint adventures ⊜⇒1—Joint adventure is combination of two or more persons in specific venture, where profit is jointly sought without partnership or corporate designation.

A "joint adventure" is a special combination of two or more persons, where, in some specific venture, a profit is jointly sought without actual partnership or corporate designation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Joint Adventure.]

2. Joint adventures ⊜⇒1—Purchase of property by two or more persons, each contributing portion of purchase price, does not establish relation of joint adventures.

Purchase of property by two or more persons, each of whom contributes portion of price,

makes them joint owners of property, but does not, without more, establish between them relation of joint adventures.

3. Mines and minerals ⊜⇒101—Assignee of oil and gas lease did not hold it as trustee for plaintiffs as associates in joint adventure, where no combination for purpose of jointly making profit was shown.

Where no combination between plaintiffs and another for purpose of jointly making a profit at or prior to time such other acquired assignment of oil and gas lease was shown, such other took legal title to assignment in his own name, and did not hold it as trustee for plaintiffs as his associates in joint venture.

4. Trusts ⊜⇒89(5)—One seeking to establish resulting trust must prove it by clear and satisfactory evidence.

One seeking to establish resulting trust must prove facts and circumstances out of which law will raise presumption of existence of such trust by evidence of the clearest and most satisfactory character.

5. Evidence ⊜⇒596(3)—Purport of written instrument should not be permitted to be overcome by evidence of less degree of strength.

The purport of a written instrument should not be permitted to be overcome by evidence of less degree of strength.

6. Trusts ⊜⇒86—Persons seeking resulting trust in assignment of oil and gas lease must show contribution of purchase money or that assignee loaned moneys and paid portion of purchase price from proceeds of such loan.

Persons seeking to establish resulting trust in oil and gas lease assigned to another were required to show by clear and satisfactory evidence either that they each contributed a definite portion of purchase money of lease or that assignee at or prior to assignment loaned to each of them moneys and paid portion of purchase price out of proceeds of such loan.

7. Appeal and error ⊜⇒931(1)—Chancellor's findings on conflicting evidence are presumably correct.

The findings of the chancellor, made on conflicting evidence, are presumably correct.

8. Witnesses ⊜⇒139(13)—Plaintiff seeking to establish resulting trust in action against heir at law of alleged trustee cannot testify to transactions or communications with deceased (Comp. St. Okl. 1921, § 588).

Plaintiff seeking to establish resulting trust in oil and gas lease in action against widow and heir at law of alleged trustee is prohibited by Comp. St. Okl. 1921, § 588, from testifying in his own behalf to transactions or communications relating to such cause of action had with deceased.

9. Courts ⊜⇒356(13)—Decree in equity will not be reversed merely because of rejection of admissible testimony, where, if admitted, result would have been the same (new equity rule 46).

On appeal from decree in equity, appellate court ought not reverse case, in view of new equity rule 46, merely on ground of rejection of admissible testimony, where it clearly ap-

*Rehearing denied March 6, 1928.

pears that result would not have been different if rejected testimony had been received.

Appeal from the District Court of the United States for the Western District of Oklahoma; Robert L. Williams, Judge.

Suit by Ed J. Bowmaster against Evelyn Carroll, T. Shelby Black, Guy S. Forcier, and others. From a decree dismissing plaintiff's amended bill, and amended answers and counterclaims of defendants Black and Forcier, plaintiff and said defendants appeal. Affirmed.

W. J. Campbell, of Tulsa, Okl. (Albert H. Bell, Ray S. Fellows, and W. D. Humphrey, all of Tulsa, Okl., on the brief), for appellants.

Sam K. Sullivan and Neal A. Sullivan, both of Newkirk, Okl. (R. J. Shive, of Newkirk, Okl., on the brief), for appellees.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an appeal from a decree in a suit in equity dismissing the amended bill of appellant Bowmaster and the amended answers and counterclaims of appellants Black and Forcier.

On October 28, 1915, the South Carolina Oil & Gas Company entered into a departmental oil and gas lease with Charles E. Norton, as superintendent of the Kaw Indians, for Ernest Thompson, a minor, and an allottee of the Kaw Tribe of Indians, whereby the oil and gas company leased from such allottee the S.W.¼ of Sec. 15, Tp. 27 N., R. 5 E., and certain other lands.

On April 24, 1916, the oil and gas company assigned out of this lease the S.½ of the S.W.¼ of said section 15, to Walter Carroll, the then husband, since deceased, of the appellee Evelyn Carroll. On July 12, 1916, this assignment was approved by the Secretary of the Interior.

The appellant Bowmaster, in paragraph 2 of his amended bill, alleged the following facts:

"Plaintiff avers that heretofore, to wit, on or about the 15th day of April, 1916, this plaintiff and the said defendants T. Shelby Black, Guy Forcier, and one Walter Carroll entered into an agreement to purchase said oil and gas mining lease, and by the terms of said agreement each of the four parties just named were to become the owner of an undivided one-fourth interest therein, with the further agreement and understanding that the said Walter Carroll would act for the said named persons in procuring the said lease, and each of the four persons were to pay their respective one-fourth part of the purchase price of said lease, said purchase price being the principal sum of $800; and, pursuant to said agreement, the said parties did purchase said oil and gas mining lease, and did pay each their one-fourth interest therein, including the expenses of procuring same; and that said Walter Carroll, acting for himself and for the plaintiff and the said defendants Black and Forcier, did take the assignment of said lease in his name, thereby causing the naked legal title thereto to become vested in him, but plaintiff avers that he (the said Walter Carroll) held the said lease and leasehold estate in trust for this plaintiff and the said Black and Forcier, each being the owner of an undivided one-fourth interest therein, the said Walter Carroll also holding in his own right an undivided one-fourth interest."

The appellants Black and Forcier allege substantially the same facts in their amended answers and counterclaims.

The amended bill and amended answers and cross-petitions sought decrees establishing the alleged trust, and also an accounting of the rents and profits.

On December 27, 1916, Walter Carroll died, leaving a last will and testament by which he bequeathed and devised to Evelyn Carroll all of his estate. On September 19, 1918, a decree of distribution was entered in the matter of the estate of Walter Carroll, deceased, in the county court of Tulsa county, Okl., decreeing that Evelyn Carroll was entitled to all of the property, real and personal, belonging to the estate of Walter Carroll, deceased.

Walter Carroll made no assignment or transfer in writing of the assignment of lease above referred to, and held the legal title thereto at the time of his death.

The alleged contract or contracts, if any there were, between Walter Carroll and appellants relative to such assignment of lease were not in writing, but rested wholly in parol.

It is difficult to determine the exact theory upon which appellants bottom their case. Under proposition 2 of their brief, they say:

"The fact that a trust resulted in favor of appellants in the lease in controversy, whether on the theory that appellants and Walter Carroll were coadventurers or on the theory that appellants advanced their portion of the consideration which was paid for the lease in controversy, or on the theory that Walter Carroll advanced for appellants their share

of the consideration under circumstances that made appellants liable to repay to him the amount of such advancements, is manifest from the proof that it was the intention of all the parties that the lease in controversy was to be their jointly owned property and was for their mutual benefit, and that it was so considered by Walter Carroll and appellants after he acquired the same, taking title in his individual name.

"The ultimate fact contended for by appellants in this appeal is that a resulting trust exists in the lease in controversy in their favor, to the extent of an undivided one-fourth interest each, and such could be the fact on various theories or grounds under the record herein. The resulting trust contended for could be the result of an agreement between appellants and Walter Carroll before the lease in controversy was acquired by him and title taken in his name, that such lease would be acquired for the benefit of the four parties, each to have an undivided one-fourth interest therein. * * * Or the resulting trust might arise by virtue of the fact that appellants paid to, or placed at the disposal of, Walter Carroll their respective portions of the consideration for this lease, at or prior to the time that Walter Carroll acquired the lease, taking the title in his own name. * * * Or the resulting trust might have arisen by reason of the fact that Walter Carroll advanced for appellants their share of the purchase price of the lease in controversy at the time he acquired the same, taking the title in his own name under an agreement, express or implied, that appellants would repay to him the amount of such advancement."

[1] A joint adventure has been defined as follows: "A special combination of two or more persons, where, in some specific venture, a profit is jointly sought, without actual partnership or corporate designation." 33 C. J. 841; Perry v. Morrison, 118 Okl. 212, 247 P. 1004, 1006; Griffin v. Reilly (Tex. Civ. App.) 275 S. W. 242, 246.

[2, 3] The pleadings did not allege, and the proofs did not establish, the relation of joint adventurers between appellants and Walter Carroll. The purchase of property by two or more persons, each of whom contributes a portion of the purchase price, makes them joint owners of the property, but does not, without more, establish between them the relation of joint adventurers. 33 C. J. § 3, p. 842; Brady v. Colhoun, 1 Pen. & W. 140, 147. Appellants failed to establish the existence of a combination between them and Walter Carroll for the purpose of jointly making a profit, at or prior to the time Walter Carroll acquired the assignment of the oil and gas lease. It follows therefore that, when Walter Carroll took the legal title in his own name to the assignment of the oil and gas lease, he did not hold three-fourths of the same as a trustee for appellants as his associates in a joint adventure.

The remaining two theories upon which appellants apparently predicate their case are so related that they may be considered together.

Prof. Pomeroy, in his work on Equity Jurisprudence (4th Ed.) vol. 1, § 155, says:

"Resulting trusts arise where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but the intent in theory of equity appears or is inferred or assumed from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go with the legal title. In such a case a trust 'results' in favor of the person for whom the equitable interest is thus assumed to have been intended, and whom equity deems to be the real owner. Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title."

See also, Springer v. Young, 14 Or. 280, 12 P. 400, 402, 403; Sanders v. Steele, 124 Ala. 415, 26 So. 882, 885, 886.

The same distinguished author, in volume 3 (4th Ed.) § 1031, says:

"In all species of resulting trusts, *intention* is an essential element, although that intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the legal title as the beneficial owner, but that a trust was to arise in favor of the party whom equity would regard as the beneficial owner under the circumstances. The equitable theory of *consideration*, heretofore explained, is the source and underlying principle of the entire class. Resulting trusts, therefore, are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom

equity deems to be the real owner. This person is the one from whom the consideration actually comes, or who represents or is identified in right with the consideration; the resulting trust follows or goes with the real consideration. All true resulting trusts may be reduced to two general types: (1) Where there is a gift to A, but the intention appears, from the terms of the instrument, that the legal and beneficial estates are to be separated, and that he is either to enjoy no beneficial interest or only a part of it. * * * (2) The second type includes the cases where a purchase has been made, and the legal estate is conveyed or transferred to A, but the purchase price is paid by B."

See, also, Walsh v. McBride, 72 Md. 45, 19 A. 4, 5; Dixon v. Dixon, 123 Md. 44, 90 A. 846, 851, Ann. Cas. 1915D, 616; Flesner v. Cooper, 39 Okl. 133, 134 P. 379, 381; Sanders v. Steele, supra; Bible v. Marshall, 103 Tenn. 324, 52 S. W. 1077, 1078; McCoy v. McCoy, 30 Okl. 379, 121 P. 176, 180, Ann. Cas. 1913C, 146.

The same author, in volume 2 (4th Ed.) § 1037, says:

"In pursuance of the ancient equitable principle that the beneficial estate follows consideration and attaches to the party from whom the consideration comes, the doctrine is settled in England and in a great majority of the American states, that, where property is purchased and the conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him. In order that this effect may be produced, however, it is absolutely indispensable that the payment should be actually made by the beneficiary, B, or that an absolute obligation to pay should be incurred by him, *as a part of the original transaction of purchase*, at or before the time of the conveyance; no subsequent and *entirely independent* conduct, intervention, or payment on his part would raise any resulting trust." See, also, Chicago, B. & Q. R. Co. v. First National Bank of Omaha, 58 Neb. 548, 78 N. W. 1064, 1065; Coons v. Coons, 106 Va. 572, 56 S. E. 576, 579; Butts v. Cooper, 152 Ala. 375, 44 So. 616, 619; Scribner v. Meade, 10 Ariz. 143, 85 P. 477, 479; Watkins v. Carter, 164 Ala. 456, 51 So. 318; Norton v. Brink, 75 Neb. 566, 106 N. W. 668, 110 N. W. 669, 671, 7 L. R. A. (N. S.) 945, 121 Am. St. Rep. 822; De Roboam v. Schmidtlin, 50 Or. 388, 92 P. 1082, 1084; Baughman v. Baughman, 283 Ill. 55, 119 N. E. 49, 53, Ann. Cas. 1918E, 895;

Ostheimer v. Single, 73 N. J. Eq. 539, 68 A. 231, 232; Hunter v. Feild, 114 Ark. 128, 169 S. W. 813, 816, 817; Whitley v. Ogle, 47 N. J. Eq. 67, 20 A. 284, 285; Ducie v. Ford, 138 U. S. 587, 592, 11 S. Ct. 417, 34 L. Ed. 1091.

[4, 5] One who seeks to establish a resulting trust must prove the facts and circumstances out of which the law will raise the presumption of the existence of such a trust by evidence of the clearest and most satisfactory character. The purport of a written instrument should not be permitted to be overcome by evidence of a less degree of strength. This rule is essential to the security of titles resting on deeds and other written instruments. Dixon v. Dixon, supra; Ferguson v. Robinson, 258 Mo. 113, 167 S. W. 447, 453; Higginbotham v. Boggs (C. C. A. 4) 234 F. 253, 257; Baughman v. Baughman, supra; Hunter v. Feild, supra; Snelling v. Utterback, 1 Bibb. (Ky.) 609, 4 Am. Dec. 661; Baker v. Vining, 30 Me. 121, 50 Am. Dec. 617; Whitley v. Ogle, supra; Robbins v. Kimball, 55 Ark. 414, 18 S. W. 457, 29 Am. St. Rep. 45; Towle v. Wadsworth, 147 Ill. 80, 30 N. E. 602, 603, 35 N. E. 73; Pomeroy's Eq. Jur. (4th Ed.) vol. 3, § 1058, p. 2421.

[6] Therefore, in order to establish a resulting trust, it was incumbent upon appellants to show by evidence of the clearest and most satisfactory character, either that appellants each contributed, at or prior to the time the assignment was taken, a definite portion of the purchase money of the lease, or that Walter Carroll, at or prior to the time the assignment was taken, loaned to each of the appellants moneys and paid a portion of the purchase price of such assignment, out of the proceeds of such loan.

[7] The learned trial judge held that the appellants failed to establish these facts. The findings of the chancellor, made on conflicting evidence, are presumably correct. U. S. v. Rhodes (C. C. A. 8) 3 F.(2d) 771, 775; Bailey v. Smith (C. C. A. 8) 14 F.(2d) 519, 522; Fienup v. Kleinman (C. C. A. 8) 5 F. (2d) 137, 141; Sumner Sollitt Co. v. First National Bank of Albuquerque (C. C. A. 8) 22 F.(2d) 620; Savage v. Shields (C. C. A. 8) 293 F. 863, 865; Roswell Drainage District v. Dickey (C. C. A.) 292 F. 29.

In Drainage District v. Dickey, supra, this court said:

"Where a chancellor has considered conflicting evidence and has based his findings thereon, such findings are to be deemed presumptively correct, and these findings will not be reversed, save in the presence of an ob-

vious error of law, or a serious mistake of fact."

We are of the opinion that the findings of the trial court were right and should not be disturbed.

[8] Appellant Bowmaster called as a witness in behalf of the appellants, testified in part as follows:

"A. He (Walter Carroll) said Shelby Black and Guy Forcier had agreed to come in with him on this lease to the extent of a fourth each, and said if I would come in to the extent of a fourth that he would take the other fourth and secure this lease."

On motion of counsel for appellees this evidence was stricken. This ruling is assigned as error. Counsel for appellants make two contentions: First, that the evidence was admissible in behalf of Bowmaster; second, that, if it was not admissible in behalf of Bowmaster, it was admissible in behalf of appellants Black and Forcier.

Section 588, Comp. St. Okl. 1921, reads as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person. * ⁕ ⁕"

Counsel for appellants say that this statute does not apply in the instant case because Evelyn Carroll, although she is an heir at law of Walter Carroll, deceased, succeeded to the assignment of the oil and gas lease in question as the devisee under the last will and testament of Walter Carroll, deceased, and not as an heir at law. We cannot agree with this construction of the statute. Evelyn Carroll was the heir at law of Walter Carroll, deceased. She acquired title to the assignment of the oil and gas lease through Walter Carroll. Appellants acquired title to their alleged cause of action immediately from Walter Carroll. Such being the facts, the statute clearly prohibited Bowmaster from testifying in his own behalf in this case to a transaction or communication relating to such cause of action had with Walter Carroll, deceased. Briley v. Briley, 98 Okl. 101, 224 P. 952; Peacock v. Albin, 39 Ind. 25.

We therefore conclude that the evidence was not admissible in behalf of appellant Bowmaster.

[9] If we assume, without expressly deciding, that the trial court should have received and considered in behalf of Black and Forcier so much of the above-quoted testimony of Bowmaster as pertained to the transactions of Carroll with Black and Forcier, it does not follow that because the court excluded this evidence, the decree should be reversed. This evidence would not have supplied the fatal omissions in the proof offered by appellants. This evidence, together with the other evidence offered in the case, would not have proven those facts essential to appellants' case which appellants failed to establish by proper evidence. Therefore, if the evidence which the trial court excluded had been received, the result must necessarily have been the same. On an appeal from a decree in equity, the appellate court ought not to reverse the case merely upon the ground that the trial judge rejected testimony that was admissible, where, upon all the facts and circumstances of the case, it is clearly apparent that the result would not have been different if the rejected testimony had been received. Migeon v. Montana Central Ry. Co. (C. C. A. 9) 77 F. 249, 252; Engelstad v. Dufresne (C. C. A. 9) 116 F. 582, 589; 4 C. J., p. 1019, § 3004; new equity rule 46.

After a painstaking examination of the record, we are of the opinion that the trial court properly determined the facts and committed no reversible error in applying the law thereto. It follows that the decree was right, and it is affirmed.