## COLEMAN et al. v. ARMSTRONG et al.

No 17251. Opinion Filed Nov. 22, 1927.

(Syllabus.)

1. **Mortgages—Action to Recover Land on Ground that Deed was Intended as Mortgage—Sufficiency of Evidence.**

Where, in an action to cancel a deed, ab-

~clute on its face, and to recover the land, on the ground that such conveyance was intended to operate as a mortgage, the burden of proof is upon plaintiff, and the evidence must satisfy the high standard of probative force requiring the same to be clear, cogent, convincing, and satisfactory. Record examined, and held, that such rule is satisfied.

## 2. Notice—Circumstances Putting One on Inquiry.

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have notice of the fact itself.

Error from District Court, Okmulgee County: John L. Norman, Judge.

Action by Becky Armstrong against Peter Coleman, William Rowsey, O. W. Mandler, E. D. Jones, Holiday Oil Company, William M. Thompson, R. B. Thompson et al., for cancellation of instruments, quieting title, possession of real estate. Judgment for plaintiff. Defendants Coleman, Rowsey, and Mandler appeal. Affirmed.

Glenn Alcorn and W. J. Owens, for plaintiffs in error.

George Miller, Jr, Simpson, Hummer & Foster, and McCrory & Monk, for defendants in error.

RILEY. J. This is a second appeal between the parties concerning the same subject-matter. See Armstrong v. Coleman, 87 Okla. 288. 210 Pac. 1018. wherein this court said:

"Becky Armstrong is an old negro woman, illiterate * * * lived in a tent or hut in the woods. * * * Peter Coleman called at Becky Armstrong's tent, carrying a club and wearing a six shooter and making threats * * * and there in the absence of her attorneys * * * prepared a dismissal. * * *"

The dismissal was by this court held for naught. Here we have presented an appeal from the case on its merits.

Becky Armstrong, née Coleman, was a Creek freedman and as such received as part of her allotment the N.E.¼ of the S.W.¼, section 36, township 15 N., range 11 E., Okmulgee county, Okla. At the time of her enrollment and delivery of the patent to said lands she was the wife of the defendant below, Peter Coleman. Becky Armstrong sought, and by the judgment below secured, the cancellation of certain conveyances to the described property, the quieting of title, the accounting of money realized from the sale of oil produced from the premises and other equitable relief. As plaintiff, she alleged that in 1908, one W. R. Watson, in company with Charles S. Allen, offered to loan her $125. and asked her to execute a mortgage on the described lands; that such acts were consummated; the plaintiff could neither read nor write; that she was advised by Allen, who acted as notary, and by Watson that the instrument signed by her mark was a mortgage, but that she subsequently learned that the same was a warranty deed; that thereafter Watson executed a warrantty deed to said lands to Peter Coleman, which was a part of a conspiracy to defraud plaintiff; that the property at the time of the execution of the fraudulent deed was worth $3,000; that now it is worth in excess of $20,000, More than $75,000 worth of oil has been produced from the land appropriated to the use of the defendants. The plaintiff complained of other instruments executed by Coleman to other of the defendants, but other interests are not involved in this appeal, except that of Rowsey and Mandler, who file their separate answers claiming a mortgage executed by Peter Coleman and others on June 9, 1922, in the total sum of $46,000. They plead estoppel and laches.

The judgment rendered canceled the purported warranty deed of plaintiff to Watson of the date of December 8, 1909, the deed from Watson to Coleman, December 19, 1908, and the deed from Watson and Willie Watson to Coleman of August 19, 1908. By the judgment plaintiff recovered possession. Rowsey's and Mandler's mortgage was stricken as applied to plaintiff, and they were enjoined from asserting any right, title, or interest to the said property.

By this appeal only the interests of Coleman, Rowsey, and Mandler are considered. The interests of the other parties were adjudicated, and from the judgment no appeal was taken.

Plaintiffs in error first contend that there was no evidence warranting the judgment that the original deed from plaintiff to Watson was intended as a mortgage, but plaintiffs in error set out the testimony of Becky Armstrong which shows she did not intend to sell her place, but to borrow money on it. Sam Hawkins corroborates the plaintiff (C.-M., p. 358):

"She, Becky, wanted to borrow some money from Walter Watson. * * * She made some papers, a mortgage they called it."

While W. R. Watson testified to the contrary, he was thoroughly discredited and impeached by a contradictory deposition of his own wherein he testified that when

Becky signed the deed he told her it was a mortgage to secure $15 and $25, to be given her at different times; and that he was acting for Peter Coleman, and because Peter was separated from Becky she would not deal with Peter; that he (Peter Coleman) said she (Becky) could not read or write and "We (Watson and Coleman) could put it over easily"—the notary read it as a mortgage. Coleman was a negro preacher and Watson a negro real estate dealer.

The learned and patient trial court, after considering the conflicting testimony and observing the demeanor of the witnesses, made a very careful finding of facts and conclusions of law, which from our examination are well supported by the record:

"Gentlemen, there are some features of this case that I am absolutely convinced of, and perfectly satisfied of. Going back to the inception of the transaction in 1908, I cannot conceive how it would be possible to sit and hear the evidence in the case,* * * to come to any other conclusion than that the plaintiff Becky Coleman, when she met this man, Walter R. Watson, had never seen or heard of the man before, and yet she did not intend and did not in fact sell this land to Watson. I am frank to say, after hearing the testimony of W. R. Watson, that I don't think that any dependence whatever can be placed in his testimony. When we consider the fact that he has heretofore given two depositions in this case which were used on the trial of this case for the purpose, and for the purpose only, of affecting his credibility as a witness, and he having admitted practically the entire contents of those two depositions on the trial in this case and the contents of those depositions being absolutely in conflict with and hopelessly irreconcilable with the testimony that he gave in this case, leaves Watson standing before this judge, at least, absolutely without any reliability as a witness. It is undisputed that this plaintiff is ignorant, illiterate, uneducated and untrained, and unadvised in a business way. I am not inclined, unmindful of the fact that the cases of this character are numerous and a great per cent. of them are absolutely without merit, based solely on a desire to recover land that has been sold, especially when it has become valuable and had no value at the time of the sale, but I am inclined to the opinion that it was (it would be) strange to a great extent indeed to reject the testimony of this negro woman and adopt the testimony of this fellow Watson. I think the transaction so far as the plaintiff Becky Coleman and Watson are concerned has been fully made out in favor of the plaintiff. I think she sustained the burden of proof to the greatest extent and the testimony is clear, cogent and convincing and satisfactory beyond

any reasonable doubt, and I am willing to concede to it the full extent of the burden imposed by the authorities of this state as being necessary to sustain it. I have no hesitancy in saying between Watson and Coleman that the transaction was intended as a mortgage. I think that the subsequent paper executed in February, 1909, fails in any wise to change the status of the original transaction. * * * If there was a monstrosity, I think that is one. * * * That does not help the situation any in my sight. I think that the transaction in the first place was saturated and reeking with fraud and unfairness on the part of Watson toward this old woman.

"We then pass to Peter Coleman and his connection with the transaction: It is true that Peter Coleman claims that he knew nothing about the transaction between his wife and Watson, except as he gathered from what Waston and Becky Coleman told him. The story that Peter Coleman tells on the witness stand surrounding his first meeting with this man Watson to myself is one of the most amusing and one of the most improbable stories that I have listened to; in effect, he dropped down out of the sky in Muskogee and met Watson before he knew it and bought this land. It might have happened that way, but I doubt it, and, in fact, I don't believe it. I think that the evidence is sufficient under all of the requirements of the law to find that at least Peter Coleman was in possession of such facts surrounding the original transaction as would put him upon inquiry which, if pursued with ordinary and reasonable diligence by any prudent man, would have developed the fact that the original transaction between Becky Coleman and Watson was not an absolute sale and conveyance of this land, but was, in fact, a mortgage as claimed by the plaintiff.

"As to all of the other defendants to this action, it is not seriously contended by the plaintiff that any of them falls in any class except that they are innocent purchasers for value without notice. In fact, it is practically conceded this is true and the court finds they are innocent purchasers for value without notice. I think that the applicable section of the statute in the protection of the interests of all the defendants in this case, other than the defendant Peter Coleman, is section 7640, Comp. Stats. 1921, basing that conclusion upon the authority of the case of Armstrong v. Phillips, 76 Okla. 192, 184 Pac. 109, a case from my own court.

"Judgment will, therefore, be rendered in favor of the plaintiff. * * *"

Peter Coleman knew the plaintiff as his former wife; he knew of her ignorance, prejudices, and fears. His counsel say that he, Coleman, took the burden of making inquiries; that he did make inquiries the plaintiff denies; but we hold there were

sufficient facts to place him upon inquiry, so that it cannot be said he was an innocent purchaser for value without notice.

The appellee next presents an instrument styled a "contract agreement" and termed by the trial court a "monstrosity," which purports to have been executed on February 12, 1909, between Watson and plaintiff some two months after Watson alleged he sold the property to Peter Coleman. No new consideration was mentioned in this unusual document, and the plaintiff denied her purported signature by mark. The matter is unworthy of consideration.

We do not consider plaintiff estopped by reason of her laches.

There is no fixed rule by which to determine when laches will constitute a defense. Stevenson v. Saline Co., 65 Mo. 425.

As to Rowsey and Mandler and their claim, the trial court found they acquired their alleged mortgage from Coleman on June 9, 1922, after the commencement of this action, so they dealt with their eyes open, and acquired no interest as innocent purchasers, adverse to plaintiff.

The judgment is clearly sustained by the evidence and the law, and the same is hereby affirmed.

MASON, V. C. J., and HARRISON, LESTER, PHELPS, and HEFNER, JJ., concur.

HUNT and CLARK, JJ., absent, not participating