## OKLAHOMA CITY v. PRATT, Ex'x, et al.

No. 28704.    Sept 19, 1939.

Rehearing Denied Nov. 7, 1939.

638

A. L. Jeffrey, Municipal Counselor, Warren W. Connor, and Robert L. Berry, for plaintiff in error.

J. Forrest McCutcheon, for defendants in error, Black Gold Petroleum Company and Liberty National Bank.

Swaffield & Swaffield and Everest, McKenzie & Gibbens, for defendants in error Idell M. Pratt, executrix, and J. W. Everest, administrator with will annexed of D. F. Sawyer's Estate.

R. H. Hudson, Harry D. Turner, and R. B. F. Hummer, for defendant in error Phillips Petroleum Company.

Beets, Zeman & Beets, for defendants in error, Barnsdall-Midway Oil Company and British American Oil Producing Company.

HURST, J. This is an action to quiet title to a tract of land in Oklahoma City consisting of less than one acre, referred to as block 16.

In 1910, Charles A. McNabb and his wife executed a dedication deed, platting into lots, blocks, streets, and alleys, a part of the east half of a quarter section of land which they owned. They designated this tract "McNabb Park Addition to Oklahoma City." Block 16 was included in that addition. Thereafter, in 1911, they executed a mortgage to D. F. Sawyer covering the east half of the quarter section referred to "except that portion thereof embraced in the plat of McNabb Park Addition to Oklahoma City." Thus block 16, being included in McNabb Park Addition, was excepted from the mortgage. Then, in 1912, the McNabbs executed another dedication deed platting certain other land in the quarter section as "McNabb Special Park Addition to Oklahoma City." The new addition overlapped the old so that block 16 was included in the new "Special Park" addition. Thereafter, on April 24, 1912, the McNabbs deeded to the State Capitol Building Company "all of McNabbs Special Park Addition." On April 29, 1912, the State Capitol Building Company conveyed the same premises to Oklahoma City.

Subsequently, in 1915, Sawyer brought an action against the McNabbs to foreclose his mortgage, making the city a party, and recovered judgment and a sheriff's deed was issued to him on April 11, 1916. On July 9, 1935, Sawyer executed an oil and gas lease to the Black Gold Petroleum Company covering block 16, and then on August 20, 1935. Sawyer died. The Black Gold then assigned an interest in the lease to the Phillips Petroleum Company, which latter company commenced a well on block 16. By February, 1936, the well was drilled to the Wilcox sand at a depth of about 6,500 feet, the pipe was set, and while waiting for the cement to set, the city made claim to the property threatening to enjoin further development. A compromise agreement was then entered into whereby the city was given an overriding royalty interest and the well was completed. There is no controversy over the ownership of the well itself or the drilling unit upon which it is located, but the question here is as to the ownership of the remainder of block 16, offsetting the well.

After the well was completed, the city, on June 16, 1936, executed an oil and gas lease to the British American Oil Producing Company covering the remainder of block 16 offsetting the well. The British American assigned interests in their lease from the city to other parties not necessary to name.

The present action was commenced in October, 1936, by the representatives of the Sawyer estate against the city and the British American Oil Company, the city's lessee, seeking to quiet title. All other interested parties were brought into the case so that the action resolves itself into one by the Sawyer estate, as lessor, and the Black Gold and Phillips Oil Companies, as lessees, against the city and those claiming through it.

The plaintiffs claimed title by virtue of the foreclosure proceedings through which Sawyer acquired a sheriff's deed, adverse possession by Sawyer and his successors from 1916, and equitable estoppel against the city. The city claimed its title through the conveyances by the McNabbs and the State Capitol Building Company.

The record is voluminous. At the conclusion of the trial the court made oral findings of fact and conclusions of law which were supplemented by written findings and conclusions to the effect that plaintiffs were entitled to recover because the property in question was conveyed to Sawyer by the foreclosure proceedings, and for the further reason that the city was estopped to deny title in plaintiffs because of its conduct.

Judgment was rendered in favor of plaintiffs, and the city and those claiming under it bring this appeal.

1. At the outset we are unable to agree

with the trial court that the sheriff's deed in the foreclosure action vested title to block 16 in Sawyer. The extent of the property covered by a mortgage must be determined by the description contained in the mortgage itself (41 C. J. 475, § 391), and if maps or plats are referred to, they will be construed together with the mortgage for the purpose of identifying the land. 41 C. J. 476, §392. At the time this mortgage was executed McNabb Park Addition as platted was the only one in existence and block 16 was included therein. The lien was thereby fixed and block 16 was excluded. The subsequent platting of the new addition could not impress a lien on block 16, where before none existed. In the foreclosure petition and decree the description was the same as that in the mortgage. No amount of ingenious reasoning can exclude the fact that block 16 was not included in the mortgage and the extent of the lien subsequently foreclosed was thereby fixed.

But plaintiffs advance two arguments to support their contention that the sheriff's deed vested title in Sawyer which requires further consideration. They contend that by stipulation filed in the foreclosure case, upon which judgment was rendered, the city admitted that block 16 was included in the mortgage. The stipulation provided in substance that it was agreed the city's right "in and to the premises involved in this cause" is inferior to Sawyer's rights and that Sawyer's lien "upon said premises" is a prior lien. It was further agreed that judgment should be rendered in accordance with the stipulation and that "the property involved herein" may be sold to satisfy the mortgage. But since the petition described the property involved in that cause identically as it was described in the mortgage, the stipulation simply refers to the land covered by the mortgage, which, as pointed out, did not include block 16. The second contention is that the State Capitol Building Company and its grantee, the city, both took the property subject to the mortgage and are thereby estopped to dispute the validity of the mortgage. The deed from the McNabbs to the State Capitol Building Company contained the clause: "Except a mortgage to D. F. Sawyer for the sum of $10,000 on this and other lands which the grantor agrees to pay." Likewise the deed from the State Capitol Building Company to the city contained a similar clause: "Except a mortgage to D. F. Sawyer for $10,000 on this and other land owned by C. A. McNabb." It will be observed that these provisions do not make the conveyance "subject to" the mortgage, but simply "except" the mortgage from the convenants against incumbrances. Supported by authority it is said in 41 C. J. 757, § 831, that "there is no estoppel where the deed excepts the mortgage from the covenants of the warranty, if the conveyance is not made expressly subject thereto. * * *" Plaintiffs rely on United States Bond & Mortgage Co. v. Keahey (1916) 53 Okla. 176, 155 P. 557, and Beckett v. Harris (1925) 115 Okla. 219, 242 P. 561. But those cases are distinguishable on their facts from the instant case. It is true that in the Keahey Case the deed from the mortgagor to the grantee recited "except" the mortgage; nevertheless, from other evidence there presented the court determined that, in fact, it was taken "subject to" the mortgage. In the Beckett Case, the opinion does not disclose the recitals of the original deed from the mortgagor to his immediate grantee, although subsequent conveyances in the chain of title were "subject to" the mortgage, but the opinion is based upon other evidence. In the instant case, there is no evidence on this issue and nothing to show that the amount of the purchase price was reduced to the extent of the mortgage, so as to establish the fact that in spite of the "excepting" clause, it was actually taken "subject to" the mortgage.

2. This brings us then to the question of whether the Sawyer estate, lessor, and the Black Gold and Phillips Oil Companies, lessees, are entitled to prevail upon the theory of estoppel. The city claims that the doctrine of estoppel cannot be asserted against a municipality. In this contention it is not correct. Respecting property held in a proprietary or private capacity, it is well settled that estoppel may be invoked against a municipality in the same manner as against any natural person. McQuillin, Munic. Corps. (2d Ed.) vol. 3, §1261, pp. 785-786; 19 R. C. L. 1148, §423. We may concede, as the city contends, that the property has been acquired and held by the city as a park. It has been held that "a city in maintaining its public parks acts in a proprietary or private capacity rather than a governmental capacity." City of Sapulpa v. Young (1931) 147 Okla. 179, 296 P. 418; Oklahoma City v. State Industrial Comm. (1931) 147 Okla. 261, 298 P. 577. Applying the ordinary principles of equitable estoppel (see Flesner v. Cooper [1917] 62 Okla. 263, 162 P. 1112) in the same manner as applicable to private persons, we think the record clearly supports the findings and judgment of the trial court upon this theory

in so far as concerns the Black Gold and Phillips Oil Companies and the Liberty National Bank, claiming through the Black Gold Petroleum Company.

In 1932 a controversy arose between the city and the attorney for Sawyer regarding the laying of a sewer line in McNabb Special Park Addition, and the city, through its manager, wrote a letter to the attorney for Sawyer attaching a copy of a letter prepared by the municipal counselor which reads as follows:

"You are advised that we have examined the title to McNabb's Special Park Addition which was dedicated to Oklahoma City subject to a mortgage for $10,000. The mortgage was never paid and the owner thereof foreclosed it and by that foreclosure McNabb Park was lost to the city and the city now has no interest in it."

The evidence shows that the city's map, prepared in 1932, designated block 16 as a park within "McNabb's Special Park." There is evidence that the Black Gold and Phillips Oil Companies had knowledge of this letter and that it was in the possession of Sawyer's attorney when the lease was executed. Although the property was listed as exempt from taxation until 1931, yet from 1931 through 1934 taxes were paid thereon by the Black Gold Oil Company and accepted by the city. Furthermore, the city granted the Phillips Petroleum Company a permit to drill a well on a drilling unit which included block 16, at which time abstracts of title were submitted to the municipal counselor at his request. No question of a claim by the city was raised until the Phillips Petroleum Company had spent $100.000 in drilling the well to the top of the Wilcox sand.

Defendants argue that there was no reliance by Sawyer or his lessees upon the letter written by the city disclaiming any interest in the property. The trial court, however, found that Sawyer and his representatives after his death and the Black Gold Petroleum Company at all times relied upon this communication and were led to believe that block 16 was included in the foreclosure proceedings and that the city claimed no interest therein, and so believing and relying, the Black Gold Petroleum Company and the Phillips Petroleum Company invested $100,000 in the drilling of the well. As to these lessees named, we do not think that the finding is against the clear weight of the evidence.

Defendants further argue that, since there is no controversy over the well itself or the drilling block on which it rests, and that, since there have been no improvements made by plaintiffs on the offsetting property involved here, plaintiffs have not been injured and an essential element of estoppel is lacking. But we are not impressed with this argument. The bringing in of the well as a large producer rendered the remainder of block 16, formerly practically worthless, valuable for oil and gas purposes. It is hard to believe that the well would have been drilled on block 16 had the plaintiffs owned the drilling unit alone. The improvement constituted an improvement to the whole premises involved.

Therefore, considering the entire record, we think the judgment should be affirmed as to the Black Gold Petroleum and the Phillips Petroleum Company and the Liberty National Bank on the theory of equitable estoppel.

3. But an entirely different situation is presented as to the Sawyer estate. It is the lessor and not the successor in interest of the Black Gold and Phillips Oil Companies. The lessor cannot take advantage of an estoppel in favor of his lessee, because, as stated in Bigelow on Estoppel (5th Ed.) pp. 347-348: "No one can be bound by or take advantage of the estoppel of another who does not succeed or hold subordinately to his position." The rule has been stated by this court that "estoppels operate only between parties and privies, and the party who pleads an estoppel must be one who has, in good faith, been misled to his injury." Williams v. Purcell (1914) 45 Okla. 489, 145 P. 1151; Simmons v. Chestnut-Gibbons Grocery Co. (1918) 70 Okla. 161, 173 P. 217; Condit v. Condit (1916) 66 Okla. 215, 168 P. 456. Privity in the law of estoppel has a narrower signification than privity in contract. In the law of estoppel privity signifies merely a succession of rights. Bigelow on Estoppel (5th Ed.) p. 347.

Sawyer, or his representatives, assuming that they relied upon the representations or conduct of the city, did nothing in reliance thereon to their prejudice or injury. Sawyer invested no money in improving the property nor did his representatives invest any money in connection with the drilling of the oil well. The Sawyer estate has done nothing and has nothing at all invested in the premises. The city did, in a moment of civic enthusiasm, pay $100,000 for the deed from the State Captiol Building Company, which included block 16. All the other property conveyed by the deed has been foreclosed and this is all the city has to show for its money. An essential element of estoppel—injury—being lacking,

the judgment of the trial court in favor of the Sawyer estate cannot be affirmed on that theory.

4. It remains to be seen if the judgment of the trial court in favor of the Sawyer estate can be sustained on any other theory. The only available theory is that of adverse possession by Sawyer and his successors. Since property held by a municipal corporation in its private or proprietary capacity may be acquired by adverse possession (19 R. C. L § 491, p. 1143), we have carefully examined the record in this regard. Although adverse possession was made an issue by the pleadings and there is a great deal of contradictory evidence on the question, yet the trial court made no findings upon this issue. It will be sufficient to say that, from our examination of the record, the claim of right by Sawyer or his tenants is at best very meager. Sawyer personally never took possession, paid taxes, or made any claim of right.

Giving our best judgment to conflicting testimony the situation appears to be simply this: Block 16 was practically nothing but a ravine or draw lying in an east and west position. Prior to the foreclosure in 1916, the McNabbs owned the land both north and south of block 16, and as far back as 1913 a fence had been built along the south side of the draw, but no one knew by whom built. After 1916, Sawyer rented the land north of the draw and it was cultivated by various tenants. The tenants might have assumed that the old fence was the south boundary line of Sawyer's property and they staked their cattle in the draw. But other neighbors did likewise. By 1924 the old fence was gone. It was never repaired by any of the tenants. In 1928, one of Sawyer's tenants started to build a new fence along the south side of the draw, on block 16, and when the owner of the McNabb property to the south objected, the tenant built the fence along the north of the draw. Some of Sawyer's tenants attempted to keep out trespassers and keep them from cutting timber in the draw and using it for a dumping ground, but we think the inference is plain that they did this for their own protection and not from any instructions from Sawyer or under a claim of his ownership.

In Wade v. Crouch (1904) 14 Okla. 593, 78 P. 91, it is said:

"For adverse possession to be effective, it must not only be hostile to the title of the true owner, but, in addition thereto, it must be either under a claim of right or under some color of title. Mere naked possession or occupancy of the premises, no matter how long, without a claim of right or color of title, cannot ripen into a good title, but must always be regarded as being an occupancy for the use and benefit of the true owner. To constitute the basis of an adverse possession, the entry upon the property must be accompanied by a claim of right."

In Flesher v. Callahan (1912) 32 Okla. 283, 122 P. 489, it was said, with citation of abundant authority, that:

"The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner."

Tested by these rules, we do not think the record will justify a finding of adverse possession on behalf of Sawyer, and had the trial court so found, it would have been against the clear weight of the evidence.

The judgment of the trial court is affirmed as to the Black Gold Petroleum Company, the Phillips Petroleum Company, and the Liberty National Bank, and the judgment is reversed as to the Sawyer estate, with directions to enter judgment in favor of Oklahoma City quieting its title to the property herein involved subject to the rights of the lessees above referred to, and the bank which claims through one of them, all in accordance with the views herein expressed.

BAYLESS, C. J., WELCH, V. C. J., and CORN and DANNER, JJ., concur.