## TAYLOR v. BRINDLEY.

### No. 3459.

Circuit Court of Appeals, Tenth Circuit.

July 28, 1947.

As Modified on Denial of Rehearing
Dec. 1, 1947.

Earl Pruet, of Oklahoma City, Okl., for appellant.

John W. Swinford, of Oklahoma City, Okl. (Troy Shelton, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, H. H. Taylor, sued the appellee, Ethel M. Brindley, to quiet the title to an oil and gas lease covering fifteen acres of royalty under described land in Oklahoma County. The issues before the trial court, as shaped by the pleadings, stipulations and pre-trial conference, were (1) whether a mineral deed executed by Brindley to one Stinchcomb, when con-

strued together with a contemporaneous contract, authorized him to execute the oil and gas lease in question without the consent of Brindley; and (2) if not, did the appellee subsequently ratify the lease; or (3) is she estopped to deny its validity.

Construing the deed and contract together, the trial court held that they did not authorize the execution of the oil and gas lease without the consent of appellee, and that she neither ratified the same nor was estopped to deny its validity. The same questions are presented on appeal.

In support of its judgment, the trial court found that Stinchcomb was desirous of purchasing a mineral interest in land belonging to one Shellenbarger, but was unable to do so because of personal differences between them. Brindley and Stinchcomb entered into an arrangement, as on other occasions, whereby Stinchcomb would furnish the money, and appellee would buy the interest and convey it to Stinchcomb to secure his purchase money. Upon the sale of the interest, the parties would share equally in the profits after the purchase money and necessary expenses had been repaid. Pursuant to this arrangement, appellee purchased thirty-five acres of royalty under the land from Shellenbarger for $2625 furnished by Stinchcomb, and on the next day, May 1, 1930, conveyed the same by mineral deed to Stinchcomb. The deed in conventional form recited that it was subject to an oil and gas lease and in the event of its termination, all future rentals for oil and gas should be owned by the grantee. On the following day, in order to record their oral arrangement, the parties entered into a written contract, reciting that Stinchcomb had paid the purchase price for the mineral interest involved in the sum of $2,625 and in consideration thereof and mutual promises and agreements, Brindley had transferred, assigned and delivered to Stinchcomb a deed to the interest, subject to the following conditions: "It is understood and agreed that the party of the first part [Stinchcomb] is to hold the title by virtue of said deed last above described, and in the event of the sale of the said royalty or any part thereof, the profits of sale price are to be divided equally among the parties in the following proportions,

* * * It is further understood and agreed that no sale of said interest above described, shall be compulsory on the other party or binding, unless a minimum price of $150.00 per acre is secured, and in the event said minimum price of $150 00 per acre is secured, then the act of each of both parties shall be binding on each of the parties in effecting the sale of said interest. * * * or in the event that no sale is consummated, the parties hereto shall share and share alike in the royalties, rentals, bonuses, or any other proceeds that may accrue hereunder and in direct proportions and on the same terms and conditions as above set forth. * * *"

Stinchcomb subsequently sold three acres of the royalty for $150 per acre; Brindley did not join in the conveyance, but was notified of the sale and given credit on the purchase price. Thereafter and on October 7, 1943, Stinchcomb executed the oil and gas lease in question to Chudacoff and Smith for $12.50 per acre. On April 26, 1944, Chudacoff and Smith assigned the lease to appellant, Taylor, and the same was filed of record on July 26, 1944. Brindley did not learn of the lease or its assignment until May, 1944, when the Magnolia Petroleum Company advised her of it during negotiations for a lease. Immediately upon learning of the outstanding lease, Brindley notified all interested parties that Stinchcomb had no authority to execute a lease covering her interest in the minerals. These conditions eventuated this lawsuit.

It was, and is, the contention of appellant that the mineral deed, being absolute and unconditional in form, certainly authorized the granting of an oil and gas lease without the consent of the appellee as grantor; that since the contemporaneous contract did not expressly prohibit, but clearly contemplated a leasing in the event of no sale, the conclusion is inevitable that the deed and contract, when construed as one instrument, contemplated and authorized Stinchcomb to execute the oil and gas lease in question. He says the conduct of the parties is confirmatory of this construction, and points to the execution by Stinchcomb of the mineral deed to the three acres of royalty for $150 per acre; the change of the depository agreement without objec-

tions; the writing of a letter by appellee to Stinchcomb in May 1945 which stated, "We executed a lease," all as convincing evidence of their mutual understanding with respect to Stinchcomb's power to execute a lease. Appellant also invokes the pre-trial conference agreement in which appellee conceded that the only limitation upon Stinchcomb's power to lease was a minimum sale price of $150 per acre.

These facts, say the appellant, bring the case within the doctrine of Pauly v. Pauly, Okl.Sup., 176 P.2d 491, in which one brother executed a quitclaim deed to the other of his interest in jointly owned property. Contemporaneously with the execution of the deed, the grantee, joined by his wife, executed a memorandum on the bottom of the deed in which it was recited that in the event of oil production on the land, the grantees "agree to remit annually one-third of royalty payments received to Frank R. Pauly, or his heirs." The Oklahoma Court held that the deed and contract, when construed as one instrument, while not a conveyance or reservation of a mineral interest, or an agreement to convey at some future date, did give the grantor a right analogous, or in many respects similar, to an oil payment in the nature of a covenant running with the land. Further defining the right, the court held that the grantor was not entitled to any share of the bonus money received by the grantees from leases, or to participate in the making of oil and gas leases, or to share in the rentals, his interest entitling him only to a share in the actual production.

By analogy, the appellant reasons that the contract and agreement in our case, when construed as one instrument, gave the appellee a right to one-half of the profits derived from the sale of the mineral interest, or "the royalties, rentals, bonuses, or any other proceeds that may accrue," but did not grant him an interest in the minerals conveyed in the deed. It is said that in any event, the restriction in the contract upon the sale or leasing is in the nature of a covenant running with the land, and not a conditional limitation upon the power to convey; that the only duty imposed upon Stinchcomb is to account for the rents and profits from the sale or leasing of the mineral interest, and the only remedy for the breach of this duty is specific performance or for damages. In that connection, our attention is called to a cause of action asserted by the appellee in a cross complaint to a suit by Stinchcomb upon promissory notes filed in the District Court of Oklahoma County in 1935. The asserted cause of action was to recover damages from Stinchcomb in the amount of $1155 by reason of his failure to consummate a sale of the mineral interest involved pursuant to an offer she is alleged to have received for $150.00 per acre. It is suggested that Brindley, having chosen to bring an action in damages against Stinchcomb for his alleged breach of the contract, she made an election of inconsistent remedies, and is now precluded from insisting upon a performance of the contract as she now construes it.

The appellee would have us treat the deed and contract as creating the relationship of tenants in common, and if not tenants in common, then trustee and beneficiary. It is said that the question for decision is not whether the contract expressly limited Stinchcomb's authority to lease appellee's interest, but whether the appellee expressly delegated such authority to her cotenant in the contract; that in the absence of express authority, Stinchcomb had no right to execute the lease as a matter of law.

It is important to consider what legal relationship between the parties was created by the controlling instruments in order to determine what legal and enforceable rights the law has given the parties occupying that particular relationship. It has been well said that "the question of what relationship is created by a given agreement between parties after the scope of the agreement has been determined, is one of law." Smith v. Cantner, 186 Okl. 348, 97 P.2d 896, 898.

The trial court held the deed a conveyance for the purpose of holding the mineral interest as security for the purchase price; that the subsequently recorded contract determined the powers of the holder of the legal title to sell or lease such property; that the contract specifically author-

i..ed either party to sell and convey the mineral interest, or any part thereof, for a minimum of $150.00 per acre; and in the event of no sale, the contract contemplated a leasing of the interest. But, the court was of the opinion that the contract being silent in respect to the authority of either to execute a lease, Stinchcomb was unauthorized either as the holder of the legal title, as cotenant, or as trustee, to execute the lease in question without the consent of appellee.

A tenancy in common is a joint estate in which there is a unity of possession, but separate and distinct titles. Fry v. Dewees, 151 Kan. 488, 99 P.2d 844; Vol. 41, Words and Phrases, Perm. Ed., page 319; Tiffany Real Property, 3d Ed., Section 426. There is no privity or fiducial relationship between cotenants. Phillips v. Homestake Consolidated Placer Mines Co., 51 Nev. 226, 273 P. 657; Allred v. Smith, 135 N.C. 443, 47 S.E. 597, 599, 65 L.R.A. 924. The relationship may be involuntary, and does not contemplate a joint venture or joint profit. See Feagin v. Champion, 195 Okl. 116, 155 P.2d 518. The owners of an undivided mineral interest are tenants in common, and each cotenant may lease his interest in the property without the consent of the others. But in the absence of an express agreement, one cotenant is not the agent of the others, and an oil and gas lease executed by him is effective only as to his interest, and ineffective as to his cotenants. Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 188; Moody v. Wagner, 167 Okl. 99, 23 P.2d 633; Howard v. Manning, 79 Okl. 165, 192 P. 358, 12 A.L.R. 819; Prairie Oil & Gas Co. v. Allen, 8 Cir., 2 F.2d 566, 40 A.L.R. 1389; Thornton Oil & Gas, Sec. 435; Tiffany Real Property, Vol. 2, Sec. 458; See Annot. 40 A.L.R. 1400, 91 A.L.R. 205.

This being so, it follows that if the deed and contract established merely a cotenancy in the minerals, our quest is at an end, because there was no express authority of one cotenant to lease the interest of the other, and the law will not infer any such authority simply because a leasing was contemplated. Howard v. Manning, supra, 79 Okl. 165, 192 P. at page 362, 12 A.L.R. 819; Hawkins v. Klein, 124 Okl. 161, 255 P. 570; Utilities Production Corp. v. Riddle, 161 Okl. 99, 16 P.2d 1092. We think, however, that the parties here were more than mere co-owners of an undivided mineral interest—their relationship went farther and deeper than that.

When two or more persons enter upon a specific venture, wherein a joint profit is sought, without any actual partnership or designation, they become co-adventurers in the enterprise. O. K. Boiler & Welding Co. v. Minnetonka Lumber Co., 103 Okl. 226, 229 P. 1045; Perry v. Morrison, 118 Okl. 212, 247 P. 1004; McKeel v. Mercer, 118 Okl. 66, 246 P. 619; Coryell v. Marrs, 180 Okl. 394, 70 P.2d 478; Feagin v. Champion, 195 Okl. 116, 155 P.2d 518; Bowmaster v. Carroll, 10 Cir., 23 F.2d 825; see Annot. 63 A.L.R. 909; Tres Ritos Ranch Co. v. Abbott, 44 N.M. 556, 105 P.2d 1070, 130 A.L.R. 963, 968. "A profit jointly sought in a single transaction by parties thereto is the chief characteristic of a joint venture." Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829, 830; see also Sinker v. Johnson, Okl.Sup., 178 P.2d 608; Fedderson v. Goode, 112 Colo. 38, 145 P.2d 981; Kasishke v. Baker, 10 Cir., 146 F.2d 113. The case of Feagin v. Champion, supra, serves to demonstrate the difference between a joint adventure and tenants in common. Specifically, it has been held that where, as here, one person purchases a mineral interest and assigns it to another as security for the purchase price, with the agreement to divide the profits of a resale, the arrangement is a co-adventure. Martin v. Morrison, Tex. Civ.App., 260 S.W. 893.

When, in pursuance of the oral agreement, Brindley purchased the mineral interest with funds furnished by Stinchcomb, for the purpose of resale and a division of the net profits, both parties thereupon acquired a presently vested interest in the described minerals. Sasiske v. Baker, supra. And as between themselves, and those having actual knowledge of the arrangement, they became joint adventurers in the enterprise. It mattered not who held the naked legal title—the holder was

the trustee for his co-adventurer. O. K. Boiler & Welding Co. v. Minnetonka, supra; Cassidy v. Gould, 86 Okl. 217, 208 P. 780; Perry v. Morrison, supra; Dobbins v. Texas Co., 136 Okl. 40, 275 P. 643. Thus, when Brindley conveyed the legal title to Stinchcomb as security for the purchase price, she did not divest herself of any interest in the minerals or diminish her estate therein. Her interest was therefore not similar or analogous to an oil payment in the nature of a covenant running with the land as in Pauly v. Pauly, supra.

When the parties came to record their oral agreement, they recited that Stinchcomb had paid the purchase price for the mineral interest conveyed by Shellenbarger to Brindley, and in consideration thereof, Brindley had deeded the interest to him "subject to the conditions" that he would "hold the title by virtue of said deed," and in the event of sale of the interest, the net profits therefrom would be divided equally. Thus the parties gave written evidence of their intention to establish a joint adventure, and filed it of record with the deed as notice to third parties.

 Unlike cotenants, there is a confidential and fiducial relationship between co-adventurers. Each member acts individually and as agent for other members within the general scope of the enterprise. Being closely akin to a partnership, the law of partnership and principal and agent underlies the conduct of the venture, and governs the rights and liabilities of co-adventurers, and of third parties as well. Dike v. Martin, 85 Okl. 103, 204 P. 1106; Cassidy v. Gould, supra; O. K. Boiler & Welding Co. v. Minnetonka Lbr. Co., supra; Perry v. Morrison, supra; Commercial Lumber Co. v. Nelson, supra. Generally, one co-adventurer is empowered to sell and convey the property involved in the joint enterprise, if such sale is not expressly prohibited, and is in furtherance of the purposes of the joint enterprise. Dobbins v. Texas Company, supra; Bond v. O'Donnell, 205 Iowa 902, 218 N.W. 898, 63 A.L.R. 901; Treat v. Murdock, Cal.App., 55 P.2d 547; Federal Underwriters Exchange v. Coker, Tex.Civ.App., 116 S.W.2d 922; Proctor v. Hearne, 100 Fla. 1180, 131 So.

173; Reinig v. Nelson, 199 Wis. 482, 227 N.W. 14; 30 Am.Juris. p. 699, Sec. 41. Thus, when third parties deal with a joint adventurer in good faith and without knowledge of any limitation upon his authority, the law presumes him to have power to bind his associates by such contracts as are reasonably necessary to carry on the business in which the joint adventurers are engaged. And they become liable upon such contracts, although they may have expressly agreed between themselves that they should not. Priestley v. Peterson, 19 Wash.2d 820, 145 P.2d 253; Block v. D. W. Nicholson Corp., Cal.App., 176 P.2d 739.

 In our case, the adventure contemplated a sale of the property, and the parties were at pains to provide the manner of its disposition. Either party was expressly authorized to effect a sale of the interest and to bind the other thereto, conditioned that a minimum of $150 per acre was received therefor. All third parties had notice of this limitation upon the power to convey, and were charged with its legal effect. In the event of no sale before the expiration of the incumbent lease, another lease was contemplated, but the contract did not authorize either party to execute a lease for a minimum of $150 per acre, or for any other sum.

Upon this premise, it may be logically argued that since a lease was contemplated in the course of the joint enterprise, the holder of the legal title, as agent or trustee, could execute a lease binding on his co-adventurer. We think, however, that the inference must go the other way. It is our judgment that where two parties enter upon a joint venture with respect to acquisition and sale of real property, and they take the pains to specifically define and delimit the powers of each with reference to the sale and disposition of the property involved in the enterprise, they will be presumed to have delegated all the powers they intended to confer upon each other in respect thereto, and to have withheld any power or authority which they failed to affirmatively delegate. Subsection 2, Section 37, Restatement on Agency. The power and authority of an agent or trustee to convey title to the realty of his principal

cr beneficiary is not lightly conferred nor readily inferable. Franco-American Securities, Ltd. v. Guillot, 186 Okl. 302, 97 P.2d 756. Restatement of Law on Trusts, Sec. 297(j) (k).

▮ As the trial court found, the appellant had actual and constructive notice of the limitations in the contract, and such notice put him upon inquiry into the nature and extent of Stinchcomb's authority to convey the interest of his principal and beneficiary. Daniel v. Toloin, 53 Okl. 666, 157 P. 756, 4 A.L.R. 704; Thomas v. Huddleston et al., 65 Okl. 177, 164 P. 106; Dobbins v. Texas Company, supra; Coleman et al. v. Armstrong, 128 Okl. 87, 261 P. 228; Galer Oil Co. v. Pryor, 172 Okl. 302, 47 P.2d 97; DeWeese v. Baker-Kemp Land Trust Corp., 187 Okl. 341, 102 P.2d 884. Appellant elected to rely upon his cold analysis of the law, and he cannot complain if it is against him. We conclude that Stinchcomb was not authorized to execute the oil and gas lease in question without the consent of his co-adventurer. Cf. Bean v. Bean, Tex.Civ.App., 79 S.W.2d 652; Gray et al v Powell, Tex.Civ.App., 282 S. W. 631.

▮ The appellee did not make an election of remedies. Her asserted cause of action for breach of the contract, and her present claim that Stinchcomb had no power to bind her to an oil and gas lease covering the mineral interest, related to two different subject matters. Her asserted remedies are not inconsistent, and she is therefore not barred from interposing the defenses tendered here. Gypsy Oil Co. v. Colbert, 179 Okl. 321, 65 P.2d 505; Buchhalter v. Rude, 10 Cir., 54 F.2d 834.

Nothing was done about the final disposition of the suit in the state court until May 1944, when appellee learned through the Magnolia Petroleum Company that Taylor was claiming a lease upon the mineral interest involved, and was negotiating with Magnolia for an assignment of one-half interest in it. Meanwhile, Taylor had attempted to secure a lease or acquittance from appellee covering her interest without informing her that he then held the oil and gas lease assignment. Upon learning the facts, she immediately repudiated the lease and commenced negotiations with Stinchcomb for a conveyance of her interest in the minerals. She offered to pay one-half of the purchase price, plus all expenses.

▮ For the sum of $4,000, Stinchcomb offered to convey Brindley one-half interest in the minerals, subject to the oil and gas lease, and to treat the same as a sale. In computing the sale price, however, he charged her with one-half of the original purchase price of the mineral interest, plus expenses, and her indebtedness on the notes, the subject matter of the suit in Oklahoma County. He proposed to give her credit for one-half of the bonuses and rentals he had received from the oil and gas lease in question. The purpose of this proposal was obviously to effect a ratification of the lease by her without acknowledging her interest in the minerals. But appellee refused to accept credit for any of the bonus money or rentals, and after negotiations over a period of a year, Stinchcomb finally executed a deed to the appellee covering one-half of the minerals, which provided in critical language that it was subject to any valid and subsisting lease. The language thus used was a compromise, and was intended to recognize the position of Stinchcomb on the one hand that the mineral interest was conveyed or sold, subject to the oil and gas lease in question, the vendee accepting one-half of the bonus and rentals as a credit on her share of the purchase price, and the contention of the appellee on the other hand that the deed was in compliance with their agreement, and that she was not recognizing the validity of the lease, or accepting any of the benefits therefrom. According to the undisputed testimony, the position of the respective parties was very clear. Since the appellee never intended to accept the benefits of the lease, there was no ratification. Restatement of Law on Agency, Section 98, Comment (C). Yates v. American Republics Corp., 10 Cir., 163 F.2d 178.

▮ When appellant acquired his interest on April 26, 1944, he had actual and constructive notice of any limitations upon Stinchcomb's power to execute the lease. The appellee did not know that the lease had been executed. Taylor did not rely

upon the conduct or any representations made by appellee. He attempted to obtain a lease or acquittance from her before she knew the lease was outstanding. He did not change his position to his detriment in reliance upon the conduct of appellee, and he is in no position to claim either a ratification or equitable estoppel. Oklahoma City v. Pratt, 185 Okl. 637, 95 P.2d 596; Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 121 F.2d 948; Hubbard v. Beverly, 197 S.C. 476, 15 S.E.2d 740, 35 A.L.R. 1206.

The judgment is affirmed.